# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 17, 2009

Charles R. Fulbruge III
Clerk

No. 08-61043

QBE INSURANCE CORPORATION

Plaintiff-Appellee

v.

BROWN & MITCHELL, INC

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

Before JOLLY, WIENER, and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this insurance coverage/exclusion dispute, Brown & Mitchell, Inc. ("BMI") appeals the district court's grant of summary judgment to QBE Insurance Corp. ("QBE"). QBE originally filed a declaratory judgment action to determine whether BMI's excess commercial general liability policy (the "Policy") required QBE to provide coverage for or defend BMI in a wrongful death suit. QBE argued that the underlying incident did not constitute an "occurrence" under the Policy or, in the alternative, that BMI's alleged misconduct fell within the Policy's "professional services exclusion." In its grant of summary judgment, the district court concluded that BMI's "intentional" conduct, as opposed to

negligent conduct, i.e., an accident, excluded it from coverage without reaching whether the professional services exclusion applied. We hold that the professional services exclusion applies and, therefore, pretermit the question of whether the underlying incident constitutes an "occurrence" under the Policy. Accordingly, the district court's judgment is AFFIRMED.

## I. FACTUAL BACKGROUND

Eleazar Casiano ("Casiano") died when a trench collapsed during a sewer installation job for which BMI served as the project engineer. On April 27, 2007, Cilvia Casiano Tranqualino ("Tranqualino"), his mother, filed a wrongful death action against BMI and others. At the time of his death, Casiano was an employee of Big Warrior Corporation, the general contractor performing the sewer installation. Tranqualino's complaint alleged that "[a]s the [engineering] firm overseeing the project, [BMI] . . . owed a duty to [Casiano] to perform its professional responsibilities as engineers in accordance with the appropriate standards" and that, with negligence and reckless disregard, it breached this duty by failing to take steps to ensure the trench's structural integrity.[1]

---

[1] More specifically, the complaint stated:

Defendant, Brown & Mitchell, Inc., . . . was the *engineering firm responsible for overseeing* the forced main sewer line that was being installed . . . . *As the engineering firm overseeing the project*, Brown & Mitchell, Inc. was responsible for the ultimate design, construction and inspection of and safety issues associated with the trench which collapsed. At all times, *Brown & Mitchell, Inc. owed a duty to Eleazar Casiano to perform its professional responsibilities as engineers* in accordance with the appropriate standards . . . . Brown & Mitchell, Inc. *acted negligently . . . in the performance of its responsibilities* by:
a.      Failure to conduct a manual soil test;
b.      Allowing the trench to be dug with near vertical walls
c.      Allowing the roadway to be undermined by the trench construction
d.      Allowing excavated materials to be placed on the edge of the trench
e.      Failing to insure that the sidewalls of the trench were shored with support walls
f.      Failing to insure that a working trench box was in place for workers [sic] safety
g.      Allowing a track hoe to operate along the trench while Mr. Casiano was in it

BMI sought policy coverage and defense benefits from QBE, with whom it had an excess commercial general liability policy. The Policy provided coverage to BMI for certain risks, including "bodily injury" caused by an "occurrence." The Policy defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Policy expressly excluded claims for bodily injury arising from the rendering or failure to render professional services as follows: "This insurance does not apply to . . . 'bodily injury' or 'property damage' due to the rendering or failure to render any professional service. This includes but is not limited to: . . . engineering services, including related supervisory or inspection services; . . . ."

In response to BMI's demand for coverage, QBE sought a declaratory judgment to the effect that BMI's claims were not covered by the Policy and that QBE had no duty to defend BMI in the wrongful death suit. BMI and QBE then filed cross-motions for summary judgment. The district court granted summary judgment to QBE.[2] The district court found that, although Tranqualino's complaint characterized BMI's conduct as negligent, it only alleged "intentional" actions and inactions and that any harm was a foreseeable consequence of the

---

h. Enlisting Mr. Casiano to assist in the measuring of the trench from inside it
I. Failing to insure that a safe means of egress was available to Mr. Casiano
j. Failing to instruct as to the recognition and avoidance of the hazards of working in an unprotected trench
k. Failing to stop unsafe acts of the contractor
l. Contributing to the unsafe acts
m. Other acts of negligence to be shown at the trial of this matter.

(emphasis added).

[2] The declaratory judgment sought relief against numerous parties, not all of which were potential additional insureds. Only BMI has appealed. Thus, we address only QBE's duty to defend BMI.

alleged conduct. As a result, the district court concluded that there was no "occurrence" as defined by the Policy and, thus, no coverage or duty to defend. BMI appeals. As below, QBE argues on appeal that BMI's conduct was not an "occurrence" and, in the alternative, if the collapse was an "occurrence," then it is excluded by the Policy's professional services exclusion.

## II. DISCUSSION

We review a grant of summary judgment de novo, applying the same standard as the district court. *Bolton v. City of Dallas*, 472 F.3d 261, 263 (5th Cir. 2006). Our inquiry "is limited to the summary judgment record before the trial court." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 n.10 (5th Cir. 1992). We must view the evidence in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and the movant has the burden of showing this court that summary judgment is appropriate, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate where the competent summary judgment evidence demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Bolton*, 472 F.3d at 263; *see* FED. R. CIV. P. 56(c). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). We may affirm summary judgment on any basis raised below and supported by the record. *Grenier v. Med. Eng'g Corp.*, 243 F.3d 200, 207 (5th Cir. 2001).

Under Mississippi law, whether a liability carrier has a duty to defend depends on the policy language and the allegations of the complaint. *U.S. Fidelity & Guar. Co. v. Omnibank*, 812 So. 2d 196, 200 (Miss. 2002). Under this so-called "eight-corners" test, the allegations in the complaint are analyzed against the language in the policy to determine coverage and the duty to defend. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 403

n.9 (5th Cir. 2008) (citing *Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 225 (5th Cir. 2005)).   If the complaint states a claim that is "within or arguably within the scope of coverage provided by the policy," then the insurer has a duty to defend.  *Am. Guar. & Liab. Ins. Co. v. 1906 Co.*, 273 F.3d 605, 610 (5th Cir. 2001).   Finally, Mississippi law demands that "the language in insurance contracts, especially exclusionary clauses, be construed strongly against the drafter."  *Burton v. Choctaw County*, 730 So. 2d 1, 8 (Miss. 1997) (citing *Nationwide Mut. Ins. Co. v. Garriga*, 636 So. 2d 658, 662 (Miss. 1994)).

As discussed above, the Policy between BMI and QBE limits coverage for bodily injuries arising from rendition of or failure to render professional services including "engineering services, including related supervisory or inspection services."[3]  Neither "professional services" nor "engineering services" is defined further.   Mississippi courts, however, have concluded that in the context of a professional service exclusion where the contract is silent on its meaning, "a 'professional service' involves the application of special skill, knowledge and education arising out of a vocation, calling, occupation or employment."  *Burton*, 730 So. 2d at 5–6; *Titan Indem. Co. V. Williams*, 743 So. 2d 1020, 1026 (Miss. Ct. App. 1999).

Applying the eight-corners test, then, we look to the complaint to determine whether the conduct alleged falls within the "professional services"

---

[3] In full, the exclusion reads:
> **2. Exclusions**
>> This insurance does not apply to:
>>> ***
>> **s. Professional Services**
>>> "Bodily injury" or "property damage" due to rendering or failure to render any professional service.  This includes but is not limited to:
>>>> ***
>>> (3)     Engineering services, including related supervisory or inspection services . . .

exclusion of the Policy. As set forth above, Tranqualino's complaint alleges that BMI owed Casiano "a duty . . . to perform its professional responsibilities as engineers" in accordance with appropriate standards. Each specific act of wrongdoing is couched as a breach of those responsibilities.

We recognize that some of the conduct complained of may not require "the application of special skill, knowledge and education." The complaint does not, however, allege that it was improper performance of BMI's non-technical activities that caused Casiano's injuries. *Cf. Thermo Terratech v. GDC Enviro-Solutions, Inc.*, 265 F.3d 329, 336 (5th Cir. 2001) (finding a professional services exclusion inapplicable when the conduct causing the accident did not require the exercise of special judgment). Nor is there any dispute that BMI's role on the project was the provision of professional services. *Cf. Cochran v. B.J. Services Co. USA*, 302 F.3d 499, 507 (5th Cir. 2002) (finding claims not excluded under a professional services provision where, despite being identified as a "consulting engineering firm," the defendant was the "company man" on the site and not hired to "design or approve design of any portion of the operation").

Instead, the complaint is explicit in attributing the accident to a breach of BMI's "professional responsibilities" as the "engineering firm" on the site. It asserts that, as the engineering firm, BMI did and did not do certain things; as the engineering firm, BMI owed a professional responsibility to Casiano; and, as the engineering firm, it breached that professional responsibility. These specific allegations make it unlike other cases where there was some ambiguity in the complaint's allegations. *See, e.g., Am. Guar. & Liab. Ins. Co. v. Leflore County*, No. 4:05CV109-M-B, 2006 U.S. Dist. LEXIS 23975 (N.D. Miss. Apr. 24, 2006). In the light of the allegations in Tranqualino's complaint, the only way to find coverage under this policy language would be to deem the exclusion completely meaningless.

Notwithstanding this analysis, BMI contends that Mississippi's jurisprudence permitting consideration of so-called "true facts" under the eight-corners test resolves the professional services question in its favor. True facts, once made known to the insurer, will defeat the application of an exclusion where (1) the true facts, if established, present potential liability of the insured for the underlying injury, and (2) a cause of action based on the true facts would be covered by the policy. *Nationwide Mut. Ins. Co. v. Lake Caroline, Inc.*, 515 F.3d 414, 418–19 (5th Cir. 2008); *Acceptance Ins. Co. v. Powe Timber Co.*, 403 F. Supp. 2d 552, 558–59 (S.D. Miss. 2005). "[I]f the unpled 'facts' would not support a [potential] claim for liability against the insured, then knowledge of these facts by the insurer does not give rise to a duty to defend." *Powe*, 403 F. Supp. 2d at 559. Importantly, "an insured [cannot] trigger the duty to defend merely by denying the allegations in the complaint" under Mississippi's narrow true facts exception. *Am. States Ins. Co. v. Natchez Steam Laundry*, 131 F.3d 551, 553 (5th Cir. 1998).[4]

BMI argues that it made QBE aware of the "true fact" that BMI's representative at the site was not an engineer and, at the time of the accident, was not performing activities that required technical expertise or skill. In fact, according to BMI, its employee—who had asked Casiano to assist him—had "only a high school education" and "was simply measuring pipe at the time of the accident" for the purpose of determining payment. BMI urges that for this reason, Tranqualino may prevail against BMI on a garden-variety negligence claim that is unrelated to its provision of professional services, which would be

---

[4] Also, to the extent that BMI has made QBE aware of facts suggesting that it properly discharged its professional obligations—for example, that the city was ultimately responsible for the trench design—we need not consider them. The question of whether BMI was actually responsible for the trench construction and the failures that caused the collapse is irrelevant to the question of coverage. *See Great N. Nekoosa Corp. v. Aetna Cas. & Sur. Co.*, 921 F. Supp. 401, 406 (N.D. Miss. 1996) ("It is the nature of the claim that is to be considered and not its merits in determining whether a duty to defend is created.").

covered by the Policy. But "measuring pipe," without more, is not necessarily inconsistent with professional services. Nor is simply having one of its employees ask Casiano to help him measure pipe sufficient to subject BMI to potential liability. Simply put, BMI's true fact either (1) does not take the action outside of the professional services exclusion, or (2) does not "support a claim for liability against [it]," and, thus, "knowledge of these facts by the insurer does not give rise to a duty to defend." *Powe*, 403 F. Supp. 2d at 559.

### III. CONCLUSION

In sum, even studiously construing the Policy in favor of BMI, the allegations in the complaint are precisely the sort of potential liability the professional services exclusion is designed to excise from coverage. BMI's attempt to introduce true facts to overcome this problem is unavailing. As such, QBE has no duty to defend under its Policy with BMI in response to the complaint in question.[5] Accordingly, the district court's judgment is AFFIRMED.

---

[5] No party has raised or addressed whether the lack of a duty to defend under this complaint also negates a duty to indemnify in general. Accordingly, that issue is not addressed here.