# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-50161
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

December 19, 2014

Lyle W. Cayce
Clerk

EARL THOMAS, Individually and as Representative of the Estate of Danny
Thomas; BRIDGITT THOMAS, Individually and as Representative of the
Estate of Danny Thomas,

> Plaintiffs - Appellants

v.

BRYAN BALDWIN, Individually,

> Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:12-CV-33

Before HIGGINBOTHAM, JONES and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:*

This is an action filed under 42 U.S.C. § 1983 alleging that police officer
Bryan Baldwin used excessive force in the shooting death of Danny Thomas.
Appellants appeal the district court's final judgment granting Baldwin's
motion for summary judgment. For the following reasons, we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 14-50161

## FACTS AND PROCEEDINGS

On February 3, 2010, Detective Bryan Baldwin received information from an ATF agent that an individual named Brian McGriff was in possession of stolen guns and property, and was possibly involved in methamphetamine production. Based on this information, Baldwin and his partner, Detective Eddie Gonzales, obtained a search warrant to search for the stolen firearms at McGriff's supposed residence—an apartment at 3903 Barrington, # 1416 in San Antonio, Texas. On February 4, 2010, police officers, including Baldwin, executed the search warrant. The officers breached the door, identified themselves as police, shouted that they had a warrant, and entered the apartment with guns drawn. Baldwin entered the apartment's bedroom, identifying himself as a police officer. In the bedroom, Baldwin found Thomas and another individual later identified as Larry Miller. Baldwin alerted his partners to the two men's presence. Baldwin ordered the two men to get on the ground and show their hands. Miller immediately complied by lying on a mattress on the bedroom floor. Thomas was farther away from Baldwin and slowly got to his knees but did not lie down on the ground. Baldwin continued to order Thomas to get to the ground. Baldwin then briefly turned away from Thomas to call for additional police assistance. When Baldwin turned back toward Thomas, Thomas was quickly rising from the mattress on the floor. Thomas's left hand was clenched and he moved his right hand toward the left hand. At this point, Baldwin shot Thomas one time, after which Thomas jumped out of a window. Thomas was found outside about twenty yards from the residence. Police later found a knife in the room, near the bedroom door where Baldwin was standing.

Thomas died from the single gunshot wound to his left lateral abdomen, according to an autopsy. The bullet entered Thomas's side and its path was "slightly back to front, left to right, and upward."

2

No. 14-50161

The operative complaint is appellants' Second Amended Complaint, filed in August 2013.[1] Appellants asserted claims against Baldwin under 42 U.S.C. § 1983 alleging excessive force, and under Texas state law for assault.[2] The district court granted summary judgment to Baldwin, finding that Baldwin was entitled to qualified immunity because his conduct was objectively reasonable under clearly established law at the time of the shooting. Appellants timely appealed.

## DISCUSSION

### I.    Standard of Review

This court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). This court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (internal quotation marks and

---

[1] The original and First Amended complaints named as defendants Officer David Berrigan and the City of San Antonio. Appellants voluntarily dismissed claims against the other defendants, leaving only claims against Baldwin.

[2] The district court granted summary judgment to Baldwin on the Texas state law claims. Since Baldwin fails to challenge or brief this aspect of the ruling on appeal, these claims are abandoned. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993).

citation omitted). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. " *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks and citation omitted). Since Baldwin has pled the affirmative defense of qualified immunity, the usual summary judgment burden shifts to appellants to show that the defense is not available. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010). "We may affirm summary judgment on any basis raised below and supported by the record." *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 443 (5th Cir. 2009).

## II.   Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, the court conducts the two-part analysis set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), as modified by *Pearson v. Callahan*, 555 U.S. 223 (2009). To defeat summary judgment, appellants must show genuine disputes of material fact about whether 1) Baldwin violated Thomas's Fourth Amendment constitutional right against excessive force; and 2) whether his actions were objectively unreasonable in the light of clearly established law at the time of the conduct. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). We may address these prongs in either order. *Pearson*, 555 U.S. at 236. Because appellants fail to show a genuine dispute of material fact about whether Baldwin's actions were unreasonable, we affirm the grant of summary judgment in his favor.

### a. Objective Reasonableness

To win on his excessive force claim, Baldwin must show "(1) an injury, (2) which resulted directly and only from the use of force that was clearly

excessive, and (3) the excessiveness of which was clearly unreasonable." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) (internal quotation marks and citation omitted).   If he cannot show these elements, qualified immunity applies.   An officer's use of deadly force is not excessive if "the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others." *Id.*  Whether force was reasonable is an objective inquiry. *See Graham v. Connor*, 490 U.S. 386, 397 (1989).  Appellants must show that the use of deadly force was objectively unreasonable "in light of the facts and circumstances confronting" the officer.  *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009) (internal quotation marks and citation omitted).   In determining whether an officer's use of force was objectively reasonable, courts must be mindful that police officers are often required to make split-second judgments "in circumstances that are tense, uncertain, and rapidly evolving" and must evaluate an officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396–97.

Here, the evidence shows that Baldwin's use of deadly force was objectively reasonable as a matter of law.   Under this circuit's caselaw, the undisputed facts show that Baldwin reasonably believed that Thomas posed a significant threat of death or bodily injury.  *See Manis*, 585 F.3d at 843.  This court has found a police officer's use of deadly force to be objectively reasonable in similar factual situations—when the subject does not comply with an officer's orders and reaches for something out of the officer's sight.  In *Manis*, this court found a police officer's actions objectively reasonable when he shot a man after approaching the man's vehicle, instructing him multiple times to show his hands, and the man reached under the front seat as if he had retrieved an object.  *Id.* at 844.  In *Reese v. Anderson*, this court upheld the use of deadly force, finding that a police officer reasonably believed a suspect was

reaching for a gun when he moved his hands out of the officer's sight in defiance of the officer's orders. 926 F.2d 494, 496 (5th Cir. 1991). The officer was reasonable in believing that the suspect posed an immediate threat to the officer's safety even though the suspect was in a vehicle that was "totally surrounded" by officers. *Id.* at 501. In *Ontiveros*, police executed a warrant on an individual suspected of possessing a weapon. 564 F.3d at 381. In defiance of a police officer's repeated orders to show his hands, the suspect reached into a boot for what the officer believed could be a weapon. *Id.* This court upheld the officer's use of deadly force as reasonable under the circumstances. *Id.* at 385.

Detective Baldwin's account—the only full account of the events leading up to the use of deadly force—shows that the use of deadly force was objectively reasonable. Baldwin and his team were executing a search warrant to locate stolen firearms. Owing to the dangerousness of the situation, they entered the property with guns drawn. Upon entering the apartment, and again as he entered the bedroom where Thomas was located, Baldwin identified himself as a police officer and yelled multiple times for Thomas and Miller to get on the ground. Only Miller complied. Thomas did not immediately get to the ground; instead, he fell to his knees and looked around as if he was searching for something. Baldwin turned away from Thomas for a moment, then saw Thomas moving quickly back up with one hand clenched as if he were holding a gun or a knife. Thomas then brought his hands together in a threatening manner, at which point Baldwin shot him.

Like in *Manis*, *Reese*, and *Ontiveros*, Baldwin entered what he reasonably believed to be a dangerous situation, Thomas defied the officer's repeated commands, and Thomas reached for something that the officer believed to be a weapon. Under our circuit's law, Baldwin's uncontroverted

account shows that he reasonably believed that Thomas posed a significant and immediate threat of death or bodily injury. *See Manis*, 585 F.3d at 843.

Appellants raise several arguments but none creates a genuine issue of material fact about the reasonableness of Baldwin's use of deadly force. First, they suggest that Baldwin's account is inherently suspicious because he is the defendant. Baldwin is the only witness who has presented a full account regarding the events immediately surrounding the shooting. The fact that the defendant's account is the only full account does not cast doubt on its veracity absent other evidence that contradicts or undermines his account. *See Ontiveros*, 564 F.3d at 383 (upholding officer's actions as reasonable when officer was the only witness to the shooting). Further, this is not the situation where the only other potential witness to challenge the officer's statements is deceased. *See Reese*, 926 F.2d at 499 (finding no explanation for the plaintiff's failure to produce summary judgment evidence when others were present in the decedent's vehicle at the time of the shooting). Miller was present in the bedroom at the time of the shooting, but appellants have not produced any affidavit from Miller that casts doubt on Baldwin's account of the events.

Here, in fact, the affidavits of others at the scene largely corroborate Baldwin's account, including the key facts that Thomas disobeyed Baldwin's commands and that Thomas was reaching for something before he was shot. Officers David Berrigan and Mark Harris both heard Baldwin command the individuals in the bedroom to show their hands. Harris saw that Thomas did not comply with Baldwin's commands and was instead standing up. Harris further corroborates Baldwin's statement that Thomas reached down for something. Officers Berrigan and Harris both heard a single shot, followed by the sound of breaking glass. Appellants present one affidavit—from Thomas's girlfriend, Michelle Archer—who was in the living room during the incident. Archer does not comment about the events in the bedroom, but to the extent

her statement is relevant, it also corroborates Baldwin's account. According to Archer, officers identified themselves as police officers executing a search warrant and yelled "get on the ground." Archer also heard a "loud bang" and she thought Thomas "broke through the window." Archer therefore corroborates that Baldwin ordered the occupants of the apartment to get on the ground and does not dispute Thomas's failure to comply with those orders. Baldwin's account—as corroborated by the statements of other officers and Archer— is therefore reasonable.

Second, appellants argue that deadly force was unreasonable because Thomas was fleeing at the time he was shot and thus did not pose an immediate threat to Baldwin or the other officers. "[A]bsent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 417 (5th Cir. 2009). Here, however, there are no material facts to support appellants' bare assertion that Thomas was fleeing at the time he was shot. Appellants attempt to rely on Thomas's autopsy report to show that, contrary to Baldwin's statement, Thomas was not facing Baldwin at the time he was shot. The autopsy, however, is consistent with Baldwin's account. The report indicates that Thomas was shot in the side—not the back—and that the bullet traveled "slightly back to front, left to right, and upward." The medical evidence here is different from the evidence that led this court to find a serious question as to the officer's reasonableness in *Baker v. Putnal*, 75 F.3d 190, 198 (5th Cir. 1996). In *Baker*, the decedent was shot four times, including once in the back. *Id.* The number of shots combined with the fact that the decedent was shot in the back created "more of a question of fact than a court may dispose of on summary judgment." *Id.* Here, Thomas was shot once and not in the back. Therefore, the site of entrance of the bullet and its path do not raise a genuine

issue of material fact as to whether Thomas was fleeing at the time of the shooting.

Third, appellants attempt to raise a genuine issue of material fact by showing that the knife that was later found in the bedroom was found across the room from where Thomas was standing. Contrary to appellants' argument, the fact that no weapon was found in Thomas's vicinity does not contradict Baldwin's account that Thomas was on his knees and had his hand clenched. This court has been clear that whether the decedent actually possessed a weapon is irrelevant so long as the police officer reasonably believed he possessed a weapon. *See Reese*, 926 F.2d at 501 ("Also irrelevant is the fact that [decedent] was actually unarmed."); *Manis*, 585 F.3d at 845. Again, appellants attempt to analogize to *Baker*. In *Baker*, in addition to the medical evidence, the plaintiffs presented the sworn testimony of three witnesses who stated that the decedent took no threatening action toward the police officer. *Baker*, 75 F.3d at 198. Here, appellants do not produce any affidavits or other evidence to challenge Baldwin's statement that Thomas disobeyed his orders, reached for something, and clenched his hand as if he were holding a weapon; the fact that no knife was found near Thomas is not evidence to the contrary. Conversely, officers Baldwin, Harris, and Berrigan, as well as Thomas's girlfriend, Archer, stated that the officers repeatedly commanded Thomas to get on the ground and show his hands. Baldwin and Harris both stated that Thomas disregarded these orders. In sum, appellants have not presented evidence to create a genuine issue of any material fact about the reasonableness of Baldwin's use of force.

## CONCLUSION

For the foregoing reasons, we find that Baldwin was entitled to qualified immunity from appellants' § 1983 excessive force claim and AFFIRM the district court's grant of summary judgment.