# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 31, 2023

Lyle W. Cayce
Clerk

No. 21-40880

Scott Crane,

*Plaintiff—Appellee/Cross-Appellant*,

*versus*

Rave Restaurant Group, Incorporated,

*Defendant—Appellant/Cross-Appellee*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:20-CV-13

_____

Before Graves, Ho, and Duncan, *Circuit Judges*.

Per Curiam:[*]

Before the court is a cross-appeal between Rave Restaurant Group, Inc. ("Rave") and its former CEO, Scott Crane. After Rave fired Crane as CEO of the company, Crane sued Rave for breach of contract, fraudulent inducement, and statutory fraud. A jury awarded Crane some of the requested monetary damages, finding that Rave breached its contract with Crane. On appeal, Rave asks the court to reverse and remand this matter to

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-40880

the district court with instructions to dismiss all claims. On the other hand, Crane asks the court to affirm the jury verdict but reverse the district court's denial of Crane's summary judgment motion and his motion to modify the judgment that would award him monetary damages for Rave's alleged breach of contract regarding his severance payment.

## Factual Background

Rave is a publicly traded company that owns Pizza Inn and Pie Five Pizza. In 2016, Mark Schwarz, Chairman of Rave's Board of Directors and the largest shareholder of Rave, along with Rave's Board of Directors (the "Board"), sought to hire a new CEO. During November and December 2016, Schwarz and Crane held various discussions about Crane becoming Rave's CEO and the terms and conditions of Crane's potential employment in that role. On December 7, 2016, Schwarz sent Crane an email attaching certain documents relating to a proposed compensation package for Crane. The attachments to that email included an initial draft of an offer letter as well as: (a) a blank form of a Restricted Stock Unit ("RSU") Award Agreement ("RSUA Agreement"); and (b) a copy of the Pizza Inn Holdings, Inc. 2015 Long Term Incentive Plan ("2015 LTIP") under which the RSUA Agreement was governed.

Crane was initially offered a $400,000 base salary plus an annual bonus of up to fifty percent as well as 150,000 RSUs under a blank form of an RSUA Agreement. Crane counteroffered and negotiated a host of changes to the initial offer. Ultimately, Crane successfully negotiated up to 300,000 RSUs. Further, the employment agreement Crane negotiated allowed for a no-cause termination and provided that Crane's receipt of the RSUs would be subject to two criteria: (1) the RSUs would vest on October 15, 2019; and (2) Crane had to achieve specified performance targets under the 2015 LTIP.

No. 21-40880

Rave hired Crane, who was employed as Rave's CEO from January 2017 through July 2019.

Around May 2019, Crane and Schwarz discussed a transition of Crane from CEO to a member of Rave's Board. Following a meeting of the Board, Rave decided on May 26, 2019 to fire Crane, and, on July 10, 2019, Rave terminated Crane's employment without cause. The Board offered Crane a $300,000 severance package that he rejected. Instead, Crane provided a counteroffer to the severance agreement, which provided additional commentary regarding some of the language. Specifically, Crane interlineated the release supplied by Rave to expressly include that he would be transferred his 300,000 Restricted Stock Units. Rave refused to sign the interlineated release. Crane received neither his 300,000 Restricted Stock Units nor his $300,000 severance pay.

**Procedural Background**

Crane filed the underlying lawsuit on January 6, 2020, alleging claims for breach of contract, fraudulent inducement, and statutory fraud, and seeking a declaratory judgment that he was entitled to approximately 600,000 additional shares of stock under the employment agreement. Regarding his breach of contract claim, Crane alleged that he performed or was excused from performing his targets and that Rave breached the contract by failing to transfer the 300,000 shares of Restricted Stock Units and failing to pay him $300,000 in severance.

Rave filed a motion for summary judgment seeking the dismissal of the underlying action. In its summary judgment motion, Rave argued that the required conditions precedent to the vesting of Crane's RSUs never occurred, which therefore negated any alleged breach by Rave for failure to award the RSUs to Crane. The district court granted Rave's motion for summary judgment in part and dismissed the statutory fraud and certain

3

No. 21-40880

parts of the breach of contract claim but allowed the breach of contract claim related to the RSUA Agreements and the fraudulent inducement claim to proceed to trial.

The district court found that there was a genuine issue of material fact regarding why Rave terminated Crane in order to determine if the relevant condition should be excused. The district court decided that the reason Rave fired Crane and whether Rave's intent behind firing Crane was to prevent him from receiving the RSUs was a fact question for a jury. Further, the district court held that the disagreement regarding whether Crane met the financial benchmarks necessary to hit his targets before the RSUs vest under the RSUA Agreement also posed a fact question better suited for a jury.

On October 25, 2021, a five-day jury trial began. The jury returned a verdict in favor of Crane on the breach of contract claim and that he take nothing on his fraudulent inducement claim. In accord with the verdict, the district court signed a Final Judgment in favor of Crane for $924,000, which represented the value of the 300,000 Restricted Stock Units that were never delivered to him. Crane filed two post-judgment motions—one for attorney's fees and a Rule 59(e) motion to modify judgment to award the $300,000 severance in light of the jury verdict that Crane was entitled to the 300,000 Restricted Stock Units. The district court granted in part the motion for attorney's fees and denied the Rule 59(e) motion.

## Discussion

### 1. The unvested RSUs were forfeited upon Crane's termination because of the employment agreement's unambiguous terms

"The proper interpretation of a contract is a legal determination that is reviewed de novo." *ExxonMobil Corp. v. Elec. Reliability Servs., Inc.*, 868 F.3d 408, 415 (5th Cir. 2017). Establishing a breach of contract requires a showing that "(1) a valid contract exists; (2) the plaintiff performed or

tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). To begin, the court "must ascertain the true intentions of the parties as expressed in the writing itself." *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015) (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011)). "This analysis begins with the contract's express language." *Murphy Expl. & Prod. Co.-USA v. Adams*, 560 S.W.3d 105, 108 (Tex. 2018). "A contract's language is given its 'plain, ordinary, and generally accepted meaning unless the instrument directs otherwise.'" *Alicea v. Curie Bldg., L.L.C.*, 08-19-00235-CV, 632 S.W.3d 142, 153 (Tex. App.—El Paso, no pet. h.) (quoting *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 764 (Tex. 2018)).

"If the Court determines that the language 'can be given a certain or definite legal meaning or interpretation, then the contract is not ambiguous and we will construe it as a matter of law.'" *Id.* (quoting *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 479 (Tex. 2019)). "However, if the provision contains more than one reasonable interpretation, it is ambiguous and creates an issue of fact." *Id.* (citing *Barrow-Shaver*, 590 S.W.3d at 479). "A contract is not ambiguous simply because the parties differ on a term's meaning; the competing definitions must be reasonable for an ambiguity to exist." *Id.* (citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)).

Here, Crane's employment agreement contains an unambiguous condition precedent, which is "an event that must happen or be performed before a right can accrue to enforce an obligation." *Conn Credit I, L.P. v. TF LoanCo III, LLC*, 903 F.3d 493, 500 (5th Cir. 2018) (quotation omitted). In the agreement, there is clear conditional language that 300,000 RSUs will

vest only if Crane is continuously employed with Rave through October 15, 2019. Since Crane was not employed through the vesting date, his rights to the RSUs did not accrue under his employment agreement's unambiguous terms. *See Sellers v. Mins. Techs., Inc.*, 753 F. App'x 272, 278 (5th Cir. 2018), *as revised* (Nov. 29, 2018) (5th Cir. 2018) (finding that a similar employment agreement unambiguously included conditional language that required a corporate executive to be employed on a certain date for RSUs to vest).

Moreover, unlike some other employment agreements that contain acceleration clauses that vest options if an executive is fired without cause before the vesting date, Crane's agreement only accelerated vesting if Crane retired, died, or became disabled before the vesting date. Absent those circumstances, the agreement provided that "[a]ll unvested Units will be forfeited" if Crane "ceases to be an employee . . . before the vesting date for any reason." Under the agreement's unambiguous terms, Crane's unvested RSUs were forfeited when Rave fired him without cause before the vesting date.

Under Texas law, courts may excuse non-performance of a condition precedent only "if the condition's requirement (a) will involve extreme forfeiture or penalty, and (b) its existence or occurrence forms no essential part of the exchange for the promisor's promise." *S. Tex. Elec. Co-op v. Dresser-Rand Co.*, 575 F.3d 504, 509 (5th Cir. 2009) (quotation omitted). Texas courts have emphasized the second part of this test by "examining whether performing the condition precedent was the object of the contract or merely incidental to it." *Varel v. Banc One Cap. Partners, Inc.*, 55 F.3d 1016, 1018 (5th Cir. 1995); *see also Sammons Enters., Inc. v. Manley*, 540 S.W.2d 751, 756 (Tex. Civ. App.—Texarkana 1976) (excusing a party's failure to get an appraisal (a condition precedent under the contract), where the appraisal "was not the object of the contract, but [was] only incidental to arriving at the fair market value of the 'put' price."). Here, the condition—continued

employment—is the object of and essential to the agreement's 2015 LTIP. Rave promised RSUs in return for Crane successfully performing his CEO duties over a defined length of time.

Relying on *Sellers*, the district court came to the opposite conclusion. *See* 753 F. App'x 272. In *Sellers*, Seller's RSUs were set to vest, but the employer conveyed to Sellers that it was going to terminate him a month before this vesting date. *Id.* at 278. The court held that, for the RSUs to vest, Sellers needed to satisfy the condition precedent of remaining employed on the vesting date. *Id.* The court then determined that he did satisfy this condition because the company did not officially fire him until after the vesting date even if it communicated its intention to fire him before the vesting date. *Id.* at 278. In dicta, the court reasoned that even if the company fired Sellers before the vesting date, "under the circumstances of this case," the condition precedent would be excused because the company unilaterally prevented him from remaining employed. *Id.* at 278–79. This dicta is nonprecedential and it also conflicts with holdings from this court's other opinions. *Knight v. Kirby Offshore Marine Pac., L.L.C.*, 983 F.3d 172, 177 (5th Cir. 2020) ("[T]he statement . . . is *dictum* and, concomitantly, not binding precedent.").

In *Wilson v. Noble Drilling Servs.*, an employment agreement awarded an employee a bonus only if he was employed on the last day of the accounting year, but the company terminated him five days before this date. 405 F. App'x 909, 915 (5th Cir. 2010). Since the employee failed to satisfy the condition precedent, this court found he was not entitled to the bonus. The reasoning of the *Wilson* court comports with Texas law. Generally, only when a party breaches a contract to prevent its counterparty from fulfilling a condition precedent does Texas law excuse non-performance. Therefore, Crane's unvested RSUs were forfeited when Rave fired him without cause before the vesting date.

## 2. Attorney's Fees

The court does not address whether Crane made a valid presentment because we vacate the attorney's fees award.

## Cross-Appeal

On cross-appeal, Crane argues that this court should reverse the district court's order granting Rave's motion for summary judgment on his breach of contract claim for the severance payment, or, alternatively, reverse the district court's denial of his Rule 59(e) motion to modify the judgment. Crane argues that "[t]he reasons Crane was ultimately successful on his breach of contract action for the 300,000 Restricted Stock Units are the same reasons he should be successful on his breach of contract action for severance payment." Rave argues that it "provided a proposed release to Crane, Crane rejected the agreement by inserting his own material, with different terms, and Rave did not sign the contract as it did not agree to the additional terms inserted by Crane."

### 1. The district court properly found Crane ineligible to receive a severance payment pursuant to a contract Crane never accepted

"We review a grant of summary judgment *de novo*, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Gonzalez v. Huerta*, 826 F.3d 854, 856 (5th Cir. 2016) (quotation omitted). "Summary judgment is appropriate where the competent summary judgment evidence demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442–43 (5th Cir. 2009). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Id.* at 443.

No. 21-40880

"Denial of a motion to vacate, alter, or amend a judgment so as to permit the filing of an amended pleading draws the interest in finality of judgments into tension with the federal policy of allowing liberal amendments under the rules." *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993). The Fifth Circuit recognizes that Rule 59(e) "favor[s] the denial of motions to alter or amend a judgment . . ." *Id.* Crane rehashes his legal arguments made in his motion for summary judgment, and a Rule 59(e) "motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

Crane argues that Rave breached its duty to prevent or delay him from performing the contract. He contends that "Rave refused to cooperate with Crane by providing him a release that would not strip him of his contractually-entitled Restricted Stock Units." Additionally, he argues that "Rave's actions violating Crane's contractual right to his Restricted Stock Units delayed, hindered, prevented, and interfered with Crane's execution of the release and thus his severance payment."

The evidence, however, shows that both parties worked together on negotiating the employment agreement, which undercuts Crane's position that Rave breached its duty to prevent or delay him from performing the contract. Additionally, Rave's actions did not delay, hinder, prevent, or interfere with Crane's execution of the release and his severance payment, because Crane himself tried to negotiate the employment agreement and sent his own counteroffer. Additionally, the jury verdict regarding the RSU Agreement has no bearing on the separately negotiated severance provision contained in the employment agreement. Therefore, the court did not error in denying Crane's summary judgment motion or the motion to modify its final judgment.

No. 21-40880

**Conclusion**

The district court is REVERSED as to the final judgment entered after the jury verdict. The district court is AFFIRMED as to its ruling on summary judgment and its denial of Crane's Rule 59(e) motion. The case is REMANDED with instructions to dismiss all claims in this action with prejudice.