**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2004-CA-01558-SCT**

*BAKER DONELSON BEARMAN & CALDWELL, P.C.*

*v.*

*JACK MUIRHEAD, AS ASSIGNEE OF GREAT*
*RIVER INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/01/2004 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | FRED L. BANKS |
| | LUTHER T. MUNFORD |
| | DAMANY FREEMAN RANSOM |
| | JAMES L. CARROLL |
| | CARLTON W. REEVES |
| | J. DOUGLAS MINOR, JR. |
| ATTORNEYS FOR APPELLEE: | ERIC T. HAMER |
| | PHILLIP J. BROOKINS |
| | JOHN LEONARD WALKER |
| NATURE OF THE CASE: | CIVIL - LEGAL MALPRACTICE |
| DISPOSITION: | REVERSED AND RENDERED - 01/26/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., DICKINSON AND RANDOLPH, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.    In this case, an insurance company denied coverage to an employee of one of its insureds.[1]    When the employee threatened a bad faith lawsuit, the insurance company employed a law firm which advised the insurer that the employee indeed had no coverage. The employee filed a bad faith lawsuit against the insurance company, and the trial judge, believing the

---

[1]As discussed later in detail, the employee who had been sued, did not contact the insurance company for coverage and representation until after the employee had lost his case in court.

employee was covered, granted summary judgment to the employee. This unexpected event so shocked the insurance company that it hired new attorneys and settled the bad faith suit by paying the employee $500,000 and assigning to him its potential legal malpractice claim against its former lawyers who advised against coverage. Armed with the assignment, the employee sued the law firm and obtained a judgment from which the law firm now appeals, claiming such assignments offend public policy and, in any case, the malpractice claim is without merit. Because we find the malpractice claim fails as a matter of law, we decline to address the public policy issue.

## BACKGROUND FACTS AND PROCEEDINGS

¶2.     In the first of three lawsuits relevant to this case, Gary Maddox claimed Jack Muirhead assaulted him in the parking lot of a bar. The jury returned a verdict for Maddox on a claim of assault.

¶3.     Muirhead filed the second suit against his employer's insurance carrier, Great River Insurance Company, claiming bad faith rejection of his post-trial demand for reimbursement of fees he paid an attorney to defend him in the Maddox suit. During the pendency of the Maddox lawsuit, Great River decided[2] it had no obligation to provide Muirhead a defense because he had no coverage for this particular matter under the policy issued to his employer. After the suit concluded in a judgment against Muirhead, he contacted Great River to request reimbursement for his attorney fees. Great River still did not believe Muirhead had coverage, but it sought advice from William N. Reed, a senior partner with Baker, Donelson, Bearman,

---

[2]Great River was aware of the lawsuit and made this decision on its own, with no request from Muirhead that it provide coverage or a lawyer to defend the suit.

Caldwell & Berkowitz, P.C. Grounded on an opinion from Baker Donelson that Muirhead had no coverage, Great River denied his claim.

¶4. The third suit resulted from a settlement reached in the second suit. Under the terms of the settlement, Great River paid Muirhead $500,000 and assigned to him its potential claim against Baker Donelson for legal malpractice in advising that Muirhead had no coverage. Muirhead proceeded with the assigned bad faith suit and obtained a judgment against Baker Donelson in the amount of $1,644,651.60. We now proceed to examine the progression of these unusual events in some detail.

### I. Gary Maddox v. Jack Muirhead

¶5. On January 20, 1995, Empire Truck Sales, Inc. held its annual sales meeting at the Ramada Plaza Hotel in Jackson, Mississippi. After dining at the hotel, several of Empire's customers, vendors and employees (including Muirhead) walked across the parking lot to the 1001 Restaurant and Bar where Empire opened a bar tab. One of Empire's employees, Alan Salter, became intoxicated and began making a scene. A vice-president at Empire asked Muirhead to take Salter away from the bar. Muirhead took Salter to the parking lot and both entered Muirhead's vehicle. At this point, Greg Maddox, another patron of the 1001, approached Muirhead's vehicle to get the license number. Muirhead contends Maddox was using profane and threatening language while both he and Salter were still inside the vehicle. Both men exited the vehicle and a fight ensued in which Muirhead severely beat Maddox, leaving him with serious damages including a broken leg.

¶6. Nine months later, Maddox sued Muirhead and the Ramada Plaza Hotel. Without consulting or even informing Empire or its insurance carrier, Muirhead employed attorney Joe

3

Moss to defend him. Muirhead and Moss discussed and considered – but decided against – placing Empire and its insurance carrier, Great River, on notice of the suit.[3] When later asked about this unusual decision, Moss testified that Muirhead instructed him not to contact Empire or its insurance company.

¶7. Maddox amended his complaint in April 1996, to add Salter and Empire as defendants. In his amended complaint, Maddox made identical claims against Salter and Muirhead, claiming they were acting within the scope of their employment when they assaulted him, thus rendering Empire liable under the doctrine of *respondeat superior*. Empire turned the suit over to its liability carrier, Great River, who employed Mark Carlson and Derrick Jones, both attorneys with the law firm McCoy, Wilkins, Stephens & Tipton, P.A. (the "McCoy Firm") to defend Empire.

¶8. Although Muirhead made no contact with Great River to request a defense in the lawsuit or insurance coverage for the claim against him, Great River's claim manager made the following notation in April 1996, in the claims diary:

> I QUESTION OUR OBLIGATION TO DEFEND THE EMPLOYEES. WE NEED TO KNOW THE FACTS. I WILL NOT DO ANYTHING ON THE COVERAGE ISSUE UNTIL WE DETERMINE THE INSUREDS SIDE OF THE STORY TO INCLUDED [SIC] THE TWO EMPLOYEES.

The record contains no evidence that Great River, at any time prior to the conclusion of the trial, consulted the McCoy Firm, or any other outside counsel, for advice or an opinion regarding its obligation to provide a defense to Muirhead.

---

[3]Empire's insurance policy requires an insured to notify Great River of a claim "as soon as practicable," and to provide certain information.

¶9. Prior to trial, both Salter and Empire filed motions seeking dismissal from the suit. The issues were briefed and argued to trial judge James Graves (now a justice on this Court). As to Salter, Judge Graves held that the statute of limitations had run on the assault claim and that the negligence claim did not "state a claim upon which relief can be granted." Thus, Judge Graves dismissed Salter from the litigation, and the dismissal was not appealed.

¶10. Judge Graves also granted summary judgment to Empire, holding there was "no genuine issue as to any material fact, that plaintiffs have no claim against Defendant Empire Truck Sales, Inc., and that [Empire was] entitled to judgment as a matter of law." Because at least one of the theories of recovery against Empire was *respondeat superior*, the trial court's ruling was tantamount to a finding, as a matter of law, that Muirhead and Salter were not acting within the course and scope of their employment when the altercation occurred with Maddox. Empire's summary judgment was not appealed.[4]

¶11. At trial, Maddox pursued a negligence claim against the Ramada, and an assault and battery claim against Muirhead. Maddox did not request or submit a jury instruction on any negligence claim against Muirhead. The trial court instructed the jury that it could consider a claim of negligence against the Ramada, and a claim of assault and battery against Muirhead.

¶12. In furtherance of his claim that his assault upon Maddox was an attempt to defend himself and Salter, Muirhead requested, and the trial court granted, an instruction which would have exonerated him from liability, had the jury found that he used "reasonable force to defend himself and his property against unprivileged and unjustified contacts, attacks or intrusions

---

[4]As discussed infra, Judge Graves granted summary judgment over a year prior to any involvement of Baker Donelson in this matter.

5

which he reasonably believed another [was] about to inflict." Muirhead also requested, and the trial court granted, a similar jury instruction concerning his alleged defense of Salter. The jury rejected Muirhead's "self-defense" and "defense of others" claims, and found him liable for assaulting Maddox. Although Maddox appealed the jury verdict, seeking additur, Muirhead did not appeal. After the defendants accepted this Court's additur, the total judgment for Maddox was $12,320 plus interest from the date of judgment.[5]

## II. Muirhead v. Great River

¶13. Following the *Maddox v. Muirhead* verdict, rendered on June 6, 1997, Muirhead and his counsel began to reconsider their prior decision to refrain from seeking assistance from Empire and its insurer. On July 21, 1997, six weeks after the jury rendered its verdict, Muirhead's counsel, Moss, sent a letter to Great River, inquiring into "the possibility of [Great River's] participation in payment of [Muirhead's] attorney'[s] fees and meager judgment which was rendered against him." In attempting to explain why he and Muirhead delayed reporting the claim for a year and nine months, Moss stated: "At the onset of this litigation I had discussed with Jack [Muirhead] Empire's participation in this defense and any judgment which might be rendered against him. For various reasons at those early stages we chose not to call upon Empire in that regard."

¶14. On October 28, 1997, Muirhead sent a letter to Great River requesting reimbursement for his attorney fees and the judgment. Great River referred the letter to Baker Donelson

---

[5]*See **Maddox v. Muirhead,** 738 So.2d 742 (Miss. 1999).*

6

senior attorney William N. Reed,[6] who assigned the matter to attorney Karen Spencer for review and investigation. Muirhead hired attorney Michael Corey to represent him in his bad faith claim against Great River.

¶15. Spencer began her investigation which included a review of the policy provisions, the transcript of the depositions taken in the *Maddox v. Muirhead* case (including Muirhead's deposition), and other related documents,[7] as well as interviews with the attorneys involved. A summary of the facts available and known to Spencer during the time of Baker Donelson's first involvement in this matter included at least the following:

1. When Muirhead was served with process in Maddox's lawsuit, he employed an attorney. After consultation with his attorney, Muirhead instructed him not to put his employer, Empire, or its insurance carrier, on notice of the suit.

2. Prior to the trial, the trial judge dismissed, as a matter of law, Maddox's claim of negligence against Salter, and his claim of *respondeat superior* liability (and all other liability) against Empire. Neither Muirhead nor Maddox appealed these findings.

3. During the trial, Muirhead's counsel represented to the trial judge: "Whereas I'm under the impression that Ramada is covered by a carrier, the defendant, Jack Muirhead *is not covered by any policy of insurance*. And we feel that it's prejudicial to him to have the jury infer that he is

---

[6]We pause here to reflect on the fact that, prior to this contact with Reed, the record provides no evidence that Baker Donelson was aware of Muirhead, Maddox or the assault which took place in the Ramada parking lot. During the past decade, much has been said about Great River's duty to defend Muirhead. At least as early as April, 1996, Great River – on its own accord with no input from Baker Donelson – questioned whether it had an obligation to defend Muirhead, and declined to do so. Its decision, as discussed infra, was at great risk of liability in the event of a later determination that the decision was incorrect. However, as also discussed infra, it turns out the decision was not incorrect.

[7]Muirhead complains that Spencer never interviewed him to get his side of the story. However, Muirhead's sworn deposition transcript included his version of the events. We are not persuaded that Spencer's reliance on Muirhead's sworn testimony was negligent or otherwise improper.

7

furnished with – that he has the funds through insurance means with which to satisfy any judgment rendered against him in this matter."

4.  Muirhead's counsel requested the trial judge to instruct the jury that Muirhead did not have insurance coverage.

5.  The only theory of recovery against Muirhead presented to the jury was assault and battery.

¶16.  Upon conclusion of her investigation, Spencer informed Muirhead's attorney in a January 19, 1998 letter that there was "no coverage afforded to Mr. Muirhead for the claims of Gary Maddox."  In the letter, Spencer explained her reasoning.

¶17.  First, she quoted policy language which limited coverage for injuries to those caused by "an accident."  She then stated she did not believe Maddox's bodily injuries were caused by an accident.

¶18.  Next, she quoted policy language which provided that employees were insured under the policy only for "acts within the scope of their employment" or while "performing duties related to the conduct of [Empire's] business."  She then stated that she did not believe the facts supported Muirhead's position that he was covered under this policy provision.

¶19.  Finally, Spencer stated that, even "assuming arguendo that Mr. Muirhead was an insured for the purpose of Gary Maddox's claim, we do not believe that there is coverage for the incident that caused Gary Maddox's bodily injury, as intentional acts are excluded by the Policy."  To support this position, she pointed out that "Maddox's claim against Muirhead was one for bodily injury which was expected and/or intended from the standpoint of the insured, and as such, is excluded from coverage by the Policy."

8

¶20. As a result of Great River's denial of his claim, Muirhead filed a bad faith lawsuit which Great River employed Baker Donelson to defend. The matter was assigned by Reed to litigation attorney Sheryl Bey who, after investigating the allegations of the complaint and background information, provided an opinion letter to Michelle Malta, an attorney employed in-house by Great River. In her letter, Bey stated, *inter alia*:

> The underlying court's determination that Empire was not at fault because its employees were not acting in the course and scope of their employment should preclude Muirhead from asserting that he was even arguably entitled to a defense as an additional insured. The court's determination that the Amended Complaint failed to state a negligence claim against Salter and Muirhead should preclude Muirhead from arguing that his actions were accidental and fell within the scope of coverage thereby entitling him to a defense. The jury instructions given in the underlying litigation regarding Muirhead addressed only whether he committed assault and battery on Maddox, both intentional acts. Therefore, Muirhead should also be judicially estopped from challenging whether he acted intentionally - again outside the parameters of coverage afforded by Great River to Empire's employees who accidentally caused injury.

¶21. During the course of the bad faith litigation, both parties filed motions for summary judgment. On April 17, 2000, Hinds County Circuit Judge Swan Yerger issued a Memorandum Opinion and Order in which he stated: "Maddox's Amended Complaint specifically alleged that at the time of the altercation, Muirhead was an employee of Empire Truck Sales and was at a business function. These allegations combined with the subject policy's broad language, in the opinion of the Court, were sufficient to trigger the defendant's duty to defend." Judge Yerger granted partial summary judgment to Muirhead and denied Great River's motion for summary judgment. Judge Yerger also stated the denial was in bad faith, and he indicated he might allow the jury to consider awarding punitive damages.

9

¶22. On May 23, 2000, soon after Judge Yerger entered his order, Great River's in-house counsel, Michelle VanHook,[8] sent a letter to Bey at Baker Donelson, documenting Great River's decision to obtain an opinion from another law firm regarding whether, in light of Judge Yerger's ruling, Baker Donelson had a conflict of interest in continuing to represent Great River in the bad faith litigation. VanHook's letter stated, in part: "[a]fter discussing with my supervisor the issue of your law firm's potential conflict of defending Great River . . . we have determined that it would be in the best interest of everyone to seek a separate opinion on this issue. We have retained the law firm of Copeland, Cook, Taylor and Bush ["Copeland Cook"] to research this issue . . . ." One month later, VanHook followed up by informing Bey that Copeland Cook would be taking over Great River's defense.

¶23. Copeland Cook assigned Robert P. Thompson to review and evaluate the bad faith case. On April 27, 2001, in correspondence to VanHook, Thompson stated:

> On June 20, 1996, the attorney[9] retained by Great River to protect the interests of Empire Truck Sales, writes an eleven page letter to Great River summarizing the facts of the case which included the depositions of Gary Maddox, Calvin Burwell, Patricia Nan Sullivan and Jack Muirhead. He also summarized the statements of Paul Horn, a 1001 bartender, Gary Hamilton, a 1001 bartender, and Jeff Whittington, the Day Detective on duty at the time of the incident. In addition, Empire's attorney interviewed current or former Empire employees, Bob Huston, Travis Enlow, and David Woods and spoke with all counsel in the case. An overview of all statements/depositions was given. In his letter, *Empire's attorney states that after his review of all of the above, "there is no information contained in the file which would indicate that the defendants were acting in the course and scope of their employment."*

(emphasis added).

---

[8]According to the record, Great River underwent changes in affiliation and/or ownership, and new personnel took over various responsibilities, including in-house claims counsel.

[9]Mark Carlson, Esq.

¶24. During settlement negotiations which followed, Muirhead demanded one and a half million dollars from Great River. Greatly concerned by Judge Yerger's ruling, Great River agreed to pay Muirhead $500,000, and to assign him a 75% interest in its potential legal malpractice claim against Baker Donelson.

### III. Muirhead v. Baker Donelson

¶25. Armed with the assignment and Judge Yerger's opinion, Muirhead sued Baker Donelson, Reed, Bey and Spencer, for alleged legal malpractice in advising Great River that it had no duty to reimburse him for his legal expenses, and that he had no coverage under the policy. The case was assigned to Circuit Judge Tomie Green, who held that Judge Yerger's finding in the previous lawsuit "stands as the law in the case because it wasn't appealed." Thus, Judge Green held that Great River's decision not to defend Muirhead in the original lawsuit was bad faith as a matter of law and served as *res judicata* on the issue, even though Baker Donelson was not a party to the suit involving Judge Yerger's decision, and had no right or opportunity to appeal.

¶26. During trial, Reed testified it was his decision to advise Great River that the policy did not provide coverage to Muirhead, and that Great River had no duty to reimburse his attorney fees. He testified his decision was based on, among other things, the pretrial rulings of Judge Graves in *Maddox v. Muirhead*, the results of the trial of that case, and the fact that this Court has never held that an insurance company is required to offer to defend a potential insured prior to a demand for coverage and representation.

¶27. Attorney Robert Gibbs, who testified as an expert for Baker Donelson, found significant the fact that, when Baker Donelson was asked to provide an opinion, the *Maddox v. Muirhead* trial was over and the results were known. This placed Baker Donelson in the advantageous

11

position of not having to speculate on the outcome. It also allowed Baker Donelson to consider Judge Graves' pretrial rulings that neither Muirhead nor Salter were acting within the scope of their employment when the altercation occurred, and the negligence claim against Salter failed as a matter of law.

*Individual defendants*

¶28. In a pretrial ruling, Judge Green held that Reed, Spencer and Bey could have no personal liability because their work on the opinion was performed within the scope of their employment with Baker Donelson. Counsel for Muirhead agreed with Judge Green and later withdrew Muirhead's proposed jury instruction regarding the individual liability of Reed, Spencer and Bey.

*The jury verdict*

¶29. The case was argued and submitted to the jury which, on February 10, 2004, returned a verdict for Muirhead of $594,651.60 in compensatory damages. The following day, the jury awarded him $750,000.00 in punitive damages, and on May 20, 2004, the trial court entered an order granting Muirhead $300,000.00 in attorney's fees, bringing the total of Muirhead's judgment to $1,644,651.60.

¶30. Following the trial and post-trial motions, Baker Donelson timely perfected an appeal, offering four arguments for reversal of the judgment:

    I.     Public policy prohibits a client assigning a claim for legal malpractice against his attorney(s) to an adversary.

II.    The advice Baker Donelson provided to Great Baker was reasonably arguable or correct and therefore cannot serve as the basis for a legal malpractice claim.

III.   The punitive damages award was not justified in fact or law.

IV.    The verdict was against the substantial weight of the evidence.

¶31.    Muirhead cross-appealed, claiming the trial court committed reversible error in dismissing the individual defendants.  Muirhead claims that, in the event this Court grants a new trial, he should be allowed to pursue his individual claims against Reed, Spencer, and Bey.

¶32.    Because we find that neither Baker Donelson nor any of its attorneys committed legal malpractice, we decline to address issues I., III., and IV.[10]

**ANALYSIS**

¶33.    In this case, a jury returned a verdict for the plaintiff.  Therefore, we must review the record and affirm unless we find the verdict so against the overwhelming weight of the evidence that "to allow it to stand would sanction an unconscionable injustice."  *Burr v. Mississippi Baptist Medical Center,* 909 So.2d 721, 730 (Miss. 2005).  However, this Court will not hesitate to reverse a jury verdict in those rare and extreme cases when circumstances warrant such action.  *See Coho Resources, Inc. v. Chapman,* 913 So.2d 899 (Miss. 2005); *Community Bank, Ellisville, Mississippi v. Courtney,* 884 So.2d 767 (Miss. 2004); *Hawthorne v. State,* 883 So.2d 86 (Miss. 2004); *McKinzie v. Coon,* 656 So.2d 134 (Miss. 1995); *Samuels v. Mladineo,* 608 So.2d 1170 (Miss. 1992).

---

[10]Our ruling that Baker Donelson was not negligent as a matter of law necessarily means that the jury verdict was against the substantial weight of the evidence.

13

¶34.   In order to recover for legal malpractice, a plaintiff must prove by preponderance of the evidence the existence of a lawyer-client relationship, negligence on the part of the lawyer in handling his client's affairs entrusted to him, and some injury proximately caused by the lawyer's negligence.  *Luvene v. Waldrup,* 903 So.2d 745, 747 (Miss. 2005); *Wilbourn v. Stennett, Wilkinson & Ward,* 687 So.2d 1205, 1215 (Miss. 1996).  Baker Donelson does not dispute that Great River was its client.  However, because we hold that Baker Donelson was not negligent, we need not reach the damages issue.

*Negligence*

¶35.   Negligence is "a failure to do what the reasonable person would do ''under the same or similar circumstances." W. Page Keeton et al., *Prosser and Keeton on Torts* § 32 at 175 (5th ed. 1984).  That is to say, a defendant's conduct must be analyzed taking into account all of the circumstances existing at the relevant time, and the defendant must be evaluated taking into account the professional qualifications and relevant standard of care.  Generally, attorneys owe to their clients:

> duties falling into three broad categories.  First he owes a duty of care consistent with the level of expertise he holds himself out as possessing.  This duty of care imports not only skill or expertise, but diligence as well.  Second he owes his client a duty of loyalty and fidelity, which include duties of confidentiality, candor and disclosure. Third, he owes any duties created by his contract with his client.

Robert A. Weems and Robert M. Weems, *Mississippi Law of Torts* § 4-6 at 59 (2002).  Indeed, this Court has held that "a lawyer owes his [or her] client the duty to exercise the knowledge, skill, and ability ordinarily possessed and exercised by the members of the legal profession similarly situated. Failure to do so constitutes negligent conduct on the part of the

14

lawyer." ***Wilbourn,*** 687 So.2d at 1215. Simply stated, to show negligent conduct (breach of duty), the plaintiff must prove by a preponderance of the evidence that a reasonable prudent lawyer faced with the same circumstances would either have done something the defendant did not do, or would have refrained from doing something the defendant did. With this standard for evaluation, we turn now to the advice provided by the Baker Donelson attorneys.

¶36. In order to evaluate Baker Donelson's conduct, we must ask what Baker Donelson knew, and when they knew it. We begin by examining the following circumstances and information known to the Baker Donelson lawyers at the time the opinion was provided to Great River:

*Policy exclusions*

1. The Great River insurance policy excluded coverage for the acts of employees (such as Muirhead) except "acts within the scope of their employment by [Empire] or while performing duties related to the conduct of [Empire's] business."

2. The policy excluded coverage for damages except those caused by an "accident."

3. The policy excluded coverage for damages "expected or intended" from the standpoint of the insured, unless such damages resulted from the use of reasonable force in protecting persons or property.

¶37. In addition to these policy provisions, we must also take into account the events related to the prior trial which were known to the Baker Donelson lawyers when they provided the opinion to Great River:

1. The event which led to the lawsuit took place in the parking lot of a bar when Muirhead voluntarily left his car and got in a fight with Maddox.

15

2. At trial, Maddox did not request a negligence instruction against Muirhead.

3. At trial, Maddox did not argue to the jury that Muirhead was negligent.

4. Judge Graves dismissed, as a matter of law, Maddox's *respondeat superior* claim against Empire. This dismissal was not appealed.

5. Judge Graves dismissed, as a matter of law, Maddox's negligence claim against Salter.

6. The jury rejected Muirhead's claim of self defense and defense of Salter, and found he was legally responsible for the injuries to Maddox.[11] This finding was not appealed.

¶38. Applying these facts to the policy provisions, Baker Donelson informed Muirhead's counsel that Muirhead had no coverage under the Great River policy because, in its opinion: (1) Maddox's injuries were not the result of an "accident," as specifically required for coverage under the policy; (2) Muirhead was not a covered employee at the time of the altercation because he was not acting within the scope of his employment and was not performing duties related to Empire's business; and (3) the harm inflicted by Muirhead upon Maddox was not covered because of the policy's exclusion for bodily injury expected or intended from the standpoint of the insured. We find this advice, under the circumstances, was entirely reasonable and appropriate.

*Duty to Defend*

¶39. Muirhead also claims Baker Donelson should have advised Great River it had a duty to defend him in the Maddox lawsuit and, therefore, Great River should reimburse his attorney fees.

---

[11]In his brief, Muirhead says he was only trying to defend his co-worker, Salter.

16

¶40. In Mississippi, an insurance company's duty to defend its insureds derives neither from common law nor statute, but rather from the provisions of its policy, that is, its insurance contract with its insured. It is a matter of contractual agreement. Absent a higher obligation created by statute, an insurance company's duty to defend is neither greater nor broader than the duty to comply with its other contractual obligations. That is not to say an insurance company can ignore its duty to defend where it has agreed to defend its insureds for covered claims, and the allegations of a complaint reasonably bring a claim within the coverage of its policy. The duty of good faith and fair dealing attends all contracts interpreted under Mississippi law. *See* Miss. Code Ann. §75-1-203; *University of Southern Mississippi v. Williams,* 891 So.2d 160, 170 (Miss. 2004).

¶41. An insurance company's duty to defend its insured is triggered when it becomes aware that a complaint has been filed which contains reasonable, plausible allegations of conduct covered by the policy. However, no duty to defend arises when the claims fall outside the policy's coverage. *See Farmland Mut. Ins. Co. v. Scruggs,* 886 So.2d 714, 719 (Miss. 2004); *Sennett v. U.S. Fidelity & Guar. Co.*, 757 So.2d 206, 212 (Miss. 2000); *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So.2d 400, 403 (Miss. 1997); and *Moeller v. Am. Guar. & Liability Ins. Co.*, 707 So.2d 1062, 1069 (Miss. 1996).

¶42. In *Sennett v. U.S. Fidelity and Guar. Co.,* 757 So.2d 206 (Miss. 2000), an off-duty employee returned to work and used a handgun that was kept on the business premises for protection, to fatally injure a co-employee. When the deceased's family sued, the owners of the business requested the insurance company to provide a defense and indemnification. The insurance company refused to provide either, claiming that its liability policy did not cover this

17

type of tortious act by an employee. In an interpleader action by the insured, the trial court agreed with the insurance company and this Court affirmed.

¶43. While the underlying assault in this case was not as severe as the fatal shooting involved in *Sennett*, they are quite similar in nature. Both cases involve a reasonable decision by the insurer (and later a judicial determination) that policy provisions did not require the insurer to provide a defense for the employee's actions.

¶44. It should be pointed out at this juncture that the jury did find that the Ramada was negligent and, accordingly, apportioned damages. However, the only finding by the jury against Muirhead was for assault.

¶45. We find Baker Donelson's advice to Great River was reasonable, prudent and appropriate. The trial court abused its discretion in allowing this case to go to the jury, and the verdict rendered by the jury was against the overwhelming weight of the evidence.

## CONCLUSION

¶46. In the ordinary case, the request for a defense is made by a named insured within the policy, leaving open only the question of whether the claims fall within the policy's coverage. In the case before us today, Muirhead was not a named insured. Therefore, Baker Donelson could not properly advise Great River to provide Muirhead a defense unless the facts and policy provisions indicated not only that the claims were covered by the policy, but also that Muirhead was an insured.

¶47. We hasten to point out that where an insurer makes the decision not to provide a defense to its insured, it runs a substantial risk of a later determination that a defense should have been provided. Such decisions, absent an arguable, reasonable basis, can result in a

18

finding of bad faith. But where, as here, it is later conclusively determined that the claimant was not an insured, and the insurance policy did not provide coverage for the claims, an insurance company has no duty, contractual or otherwise, to provide a defense or to reimburse attorney fees already expended.

¶48. Accordingly, we reverse the trial court's judgment and render in favor of Baker Donelson Bearman & Caldwell, P.C.

¶49. **REVERSED AND RENDERED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**