# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-60014

United States Court of Appeals
Fifth Circuit

**FILED**
December 29, 2017

Lyle W. Cayce
Clerk

DOCTOR JONATHAN M. ISOM,

Plaintiff - Appellant

v.

VALLEY FORGE INSURANCE COMPANY; TRANSPORTATION INSURANCE COMPANY; JOHN DOE AS AGENT FOR THE DEFENDANTS; JOHN DOE CORPORATIONS 1-20,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:16-CV-109

Before KING, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:*

Jonathan M. Isom, an anesthesiologist, sued a surgeon who refused to work with him, alleging racial discrimination. The parties settled that action for $4 million. But instead of paying damages, the surgeon and his practice assigned Isom their right to sue their liability insurers for indemnity. Isom did just that, bringing this action against the insurers for breach of contract and

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60014

breach of the covenant of good faith and fair dealing—seeking not just the $4 million he was promised in the settlement but also punitive damages. The district court concluded that Isom's claim did not qualify for coverage under the relevant insurance policies and granted summary judgment in the insurers' favor. Isom appeals, and we AFFIRM.

## I.

## A.

Jonathan M. Isom is an anesthesiologist. According to his complaint, he was a "contract employee" with Wesley Medical Center ("Wesley") from November 2012 to July 2013. Thomas B. Baylis is an orthopedic surgeon and the chief executive officer of Premier Orthopedic & Sports Medicine ("Premier" and together with Baylis, the "Insureds"). Wesley occasionally assigned Isom to provide anesthesiology services during Baylis's operations. Isom alleged, however, that Baylis refused to work with him solely because he is black, and instead required Isom to arrange for a white anesthesiologist to assist Baylis during surgery. Isom also alleged that Baylis was openly hostile and made derogatory remarks about him. According to Isom, Wesley's management ignored his complaints and ultimately terminated his contract without cause.[1]

In August 2013, Isom filed a discrimination charge against Wesley with the U.S. Equal Employment Opportunity Commission ("EEOC"). The EEOC closed its investigation after concluding that Isom was an independent contractor and issued a right to sue letter. Isom also filed a charge of discrimination against Premier. The EEOC closed that investigation and issued a right to sue letter after determining that no employment relationship existed between Isom and Premier.

---

[1] We merely summarize Isom's allegations. We make no judgment as to the validity of any of his discrimination claims, which have been settled.

No. 17-60014

Shortly after that, Isom sued the Insureds in federal district court, alleging racial discrimination in violation of federal law. In September 2015, the parties entered into a consent judgment in the amount of $4 million. In reality, the Insureds paid nothing. Instead, they "sold" Isom their right to recover under various insurance policies in exchange for Isom's promise not to pursue any of the Insureds' other assets. The Insureds nonetheless retained any claims against their insurers for attorneys' fees and expenses associated with their defense.

**B.**

The Insureds had two general liability policies that are relevant to this litigation.[2] A policy from Valley Forge Insurance Company provided coverage from December 2011 to December 2012. And another policy from Transportation Insurance Company provided coverage from December 2012 to December 2013.[3] The policies are substantially similar and contain two coverage forms relevant here: the Employment Practices Liability Coverage Form ("EPL") and the Businessowners Liability Coverage Form ("BLCF").

Under the EPL, the Insurers agreed to pay any "sums in excess of the deductible and subject to the limits of liability that the Insured becomes legally obligated to pay as 'damages' because of a 'claim' resulting from a 'wrongful employment practice.'" To qualify for coverage, a claim must be "first made against an insured, during the 'policy period' or Extended Reporting Period, if applicable." The policy defines a claim as "a 'suit' or written demand for monetary damages against an insured and made by or on behalf of . . . an 'employee' . . . for a 'wrongful employment practice.'" Employee is, in turn,

[2] The Insureds also had an umbrella policy through Continental Casualty Company. However, Isom has not named Continental Casualty Company as a party in this action or pursued recovery under that policy.

[3] We refer to Valley Forge Insurance Company and Transportation Insurance Company collectively as the "Insurers."

3

defined as "all of your past, present or future full-time or part-time employees, including seasonal and temporary employees and employees leased or loaned to you." The definition expressly excludes independent contractors.

Under the BLCF, the Insurers must cover any "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies." "Bodily injuries" must result from an "occurrence," which is defined elsewhere in the policy as an "accident." "Bodily injuries" and "personal and advertising injuries" arising out of employment-related practices such as "defamation, harassment, humiliation or discrimination" are specifically excluded. So too is "'[b]odily injury' . . . expected or intended from the standpoint of the insured." The BLCF additionally excludes from coverage any "[p]ersonal and advertising injury . . . [c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'" or "[a]rising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity."

## C.

The Insurers received notice of Isom's lawsuit on January 30, 2014, and immediately began to investigate. A claims adjuster called Premier's manager, Ryan Cole, who told the adjuster that Isom was an independent contractor for Wesley and not an employee of Premier. Premier's defense counsel subsequently told a claims adjuster that Isom's EEOC complaint against Premier had been dismissed after the EEOC determined that Isom was not an employee of Premier. Based on that information, the Insurers determined that Isom's lawsuit was not covered under the EPL because Isom was not an "employee" of the Insureds. The Insurers also determined that Isom's lawsuit did not qualify for coverage under the BLCF because Isom alleged that the

No. 17-60014

Insureds discriminated against him intentionally. The Insurers notified the Insureds that their claim had been denied on May 1, 2014—over one month before their answer was due on June 23, 2014.

After Isom and the Insureds settled, Isom filed this lawsuit against the Insurers in Mississippi state court. He alleged breach of contract and breach of the implied covenant of good faith and fair dealing, seeking compensatory and punitive damages. The Insurers removed the action to federal court based on diversity. The parties later cross-motioned for summary judgment. The Insurers argued that they did not breach the policies because neither the EPL nor the BLCF covered Isom's claims in the discrimination lawsuit.

The district court agreed and granted the Insurers' motion. It held that the Insurers had no duty to defend against the discrimination lawsuit because Isom's complaint did not allege facts establishing that he was an "employee" of Baylis or Premier. The district court also rejected Isom's argument that his complaint could be construed to support a slander or invasion of privacy claim covered under the BLCF. Because the court concluded that the Insurers had not breached the policies, it also held that they had not breached the covenant of good faith and fair dealing. The district court dismissed Isom's claims with prejudice and denied his motion for partial summary judgment.

Separately, the district court disqualified two of Isom's attorneys for unauthorized practice of law. The Insurers moved for disqualification because both attorneys had allowed their names to be listed on the complaint and attempted to negotiate a settlement before the district court acted on their applications for admission to practice pro hac vice. Isom did not respond. After the Insurers moved for disqualification, the district court granted one attorney's application and denied the other. The Insurers then filed a motion to revoke the first attorney's admission and oppose the second attorney's admission. Isom again failed to respond. The district court concluded that the

No. 17-60014

attorneys' activities qualified as unauthorized practice under Mississippi law, and, in part because Isom never responded, the district court disqualified both attorneys. Isom filed a motion for reconsideration, which the district court denied.

Isom appeals the district court's grant of summary judgment in favor of the Insurers and the disqualification of his out-of-state counsel.[4] We conclude that the district court properly granted summary judgment and find no abuse of discretion in its decision to disqualify Isom's out-of-state counsel.

## II.

We review the district court's grant of summary judgment de novo. *Estate of Bradley ex rel. Sample v. Royal Surplus Lines Ins. Co.*, 647 F.3d 524, 528 (5th Cir. 2011). We view the facts in the light most favorable to the non-moving party. *Id.* However, we must affirm the grant of summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Isom's sole contention on appeal is that the district court erred by determining that there was no duty to defend. Because the existence of the duty to defend depends on the allegations in the complaint and the policy language, it is a question of law. *See Sample*, 647 F.3d at 529.

## III.

Jurisdiction in this case is based on diversity. Thus, we must apply Mississippi law. *See Nationwide Mut. Ins. Co. v. Lake Caroline, Inc.*, 515 F.3d 414, 418 (5th Cir. 2008).

---

[4] This is not Isom's first appearance in this court. Before the district court granted summary judgment, Isom filed a petition for a writ of mandamus challenging the district court's disqualification ruling and denial of his attorney's pro hac vice application. This court denied that petition.

No. 17-60014

## A.

In order to determine whether there is a duty to defend under Mississippi law, we first examine two documents: the complaint and the policy. *See QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 443 (5th Cir. 2009); *Auto. Ins. Co. of Hartford v. Lipscomb*, 75 So. 3d 557, 559 (Miss. 2011). The duty to defend is a matter of contract, and there can be no duty to defend when a claim falls outside the policy's coverage. *See Baker Donelson Bearman & Caldwell, P.C. v. Muirhead*, 920 So. 2d 440, 450–51 (Miss. 2006). Only if the complaint "contains reasonable, plausible allegations of conduct covered by the policy" does the duty to defend arise. *Id.* at 451; *see State Farm Mut. Auto. Ins. Co. v. LogistiCare Sols., LLC*, 751 F.3d 684, 689 (5th Cir. 2014) (quoting *Baker Donelson*, 920 So. 2d at 451); *see also Brown & Mitchell*, 591 F.3d at 443 (characterizing inquiry as whether a claim is "within or arguably within the scope of coverage" (quoting *Am. Guar. & Liab. Ins. Co. v. 1906 Co.*, 273 F.3d 605, 610 (5th Cir. 2001))).

We must interpret the policy according to its plain terms and strive to give effect to all of its provisions. *See Lake Caroline*, 515 F.3d at 419 (quoting *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382–83 (5th Cir. 1998)). Any ambiguities and exclusionary provisions must be construed against the insurer and in favor of the insured. *See S. Healthcare Servs., Inc. v. Lloyd's of London*, 110 So. 3d 735, 744 (Miss. 2013). "But 'if a contract is clear and unambiguous, then it must be interpreted as written,'" even if doing so would result in hardship to the insured. *LogistiCare Sols.*, 751 F.3d at 688 (quoting *U.S. Fid. & Guar. Co. of Miss. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008)). Moreover, language is not ambiguous merely because the parties disagree over its interpretation. *See Martin*, 998 So. 2d at 963. Rather, language is ambiguous only if it "can be logically interpreted in two or more ways, where one logical interpretation provides for coverage." *Id.*

7

No. 17-60014

Although the court's initial inquiry is limited to the complaint and the policy, it may stray beyond the confines of these documents. Where an insurer's investigation uncovers "true facts" that would trigger coverage if established, then it "must provide a defense until it appears that the facts upon which liability is predicated fall outside the policy's coverage." *Lipscomb*, 75 So. 3d at 559. But this doctrine cuts both ways. Just as the insurer's knowledge of the "true facts" can trigger the duty to defend, *see Brown & Mitchell*, 591 F.3d at 444, it can also release the insurer from that duty, *see Lipscomb*, 75 So. 3d at 560.

**B.**

As an initial matter, we will consider only whether the EPL imposed a duty to defend under the circumstances of this case. Although Isom extensively block-quotes the BLCF in the "Statement of the Case," he does not actually argue in his brief that there was a duty to defend under the BLCF. Consequently, Isom has forfeited that argument, and we will not consider it on appeal. *See, e.g.*, *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) (collecting authorities).

**C.**

Isom does not argue on appeal that he was an employee of Insureds. Nor can he. His complaint did not allege that he was an employee of Baylis or Premier, merely that he was assigned to work with them. Moreover, the EEOC Dismissal and Notice of Rights attached to the complaint indicated that the EEOC had closed its investigation because it found no employer-employee relationship. Thus, it was clear based on the complaint alone that Isom was not an employee of Baylis or Premier. *See United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004) ("The exhibits

8

attached to the complaint, however, are part of the complaint 'for all purposes.'" (quoting Fed. R. Civ. P. 10(c))).[5]

Isom's sole argument on appeal is that under a "fair reading" of his discrimination complaint, he "may have been" a leased or loaned employee under Mississippi's borrowed servant doctrine. But Isom did not even mention the borrowed servant doctrine in his briefing in the district court. Rather, he simply argued that it was not possible to determine from his complaint whether or not he was an "employee" of the Insureds. He never argued that he was a leased or loaned employee under the borrowed servant doctrine or any other rationale. Because he did not squarely present this argument in the district court, he has forfeited it on appeal. *Cf. Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005) ("If a party wishes to preserve an argument for appeal, the party 'must press and not merely intimate the argument during the proceedings before the district court.'" (quoting *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 n.4 (5th Cir. 1996))).

Even assuming Isom preserved this argument, it lacks merit. Under the borrowed servant doctrine, "if one person lends his servant to another for a particular employment, the servant, for anything done in that employment, is dealt with as the servant of the one to whom he had been lent, although he remains the general servant of the person who lent him." *N. Elec. Co. v. Phillips*, 660 So. 2d 1278, 1281 (Miss. 1995) (quoting *Runnels v. Burdine*, 106 So. 2d 49, 51 (Miss. 1958)). To determine whether an individual qualifies as a "borrowed servant," Mississippi courts consider the following three factors: (1) whose work is being performed; (2) who controls or has the right to control the worker's performance; and (3) whether the worker voluntarily accepted the

---

[5] As this litigation progressed, Isom admitted in response to requests for admissions that he was not and never had been an employee of the Insureds.

No. 17-60014

special employment. *Gorton v. Rance*, 52 So. 3d 351, 359 (Miss. 2011) (quoting *Jones v. James Reeves Contractors, Inc.*, 701 So. 2d 774, 778–79 (Miss. 1997)). Even though all three factors are relevant to the inquiry, "[t]he second factor, right of control, is the determinative factor in ascertaining whether an employment relationship is that of master-servant or one of principal-independent contractor." *Jones*, 701 So. 2d at 779.

As an initial matter, it is not clear that Isom ever worked with Baylis. Isom's discrimination complaint alleged, "*Whenever* [Isom] was assigned to perform anesthesiology services for [Baylis], [Baylis] would refuse to allow [Isom] to provide such services." (emphasis added). Although counsel stated at oral argument that the two did in fact work together, counsel's assertions at oral argument cannot retroactively amend a complaint in a lawsuit settled more than two years ago.

Moreover, it is clear that Isom, an anesthesiologist, was not the borrowed servant of Baylis, an orthopedic surgeon. In *Starcher v. Byrne*, the Mississippi Supreme Court held that a nurse-anesthetist was not the borrowed servant of a surgeon with whom she worked. *See* 687 So. 2d 737, 741 (Miss. 1997). The nurse-anesthetist was under no obligation to follow the surgeon's orders if she disagreed with them, and the surgeon did not pay her for her services. *See id.* Thus, the nurse-anesthetist was the agent of the anesthesiologist for whom she was filling in, not the surgeon. *See id.* Had the anesthesiologist attended the surgery himself, rather than substituting the nurse, there would have been no colorable argument that he was the surgeon's borrowed servant: "[I]t cannot be said that one doctor is the employee of another in a surgical situation where each performs an independent function and bills the patient independent of the other." *Id.*

Isom's complaint merely states that he and Baylis were both on staff at Wesley. Isom alleged that he "was assigned to perform anesthesiology services

10

for" the Insureds. But Isom was not performing anesthesiology services for the Insureds, he was performing them for the patient. There is no indication in the complaint that the Insureds paid Isom or controlled his performance. *See id.* Rather, on the face of the complaint it appears that Isom and Baylis were independent specialists performing different functions during the surgery. Absent further detail, the complaint did not contain "reasonable, plausible allegations," *Baker Donelson*, 920 So. 2d at 451, that Isom was even arguably the Insureds' leased or loaned employee.

Isom contends that the Insurers' initial uncertainty regarding coverage demonstrates the existence of a duty to defend. This might be relevant under the "true facts" doctrine if the Insurers learned facts that brought Isom's claim within the scope of the EPL. That is not what happened here. Rather, a claims adjuster evaluating coverage under the EPL quickly determined that Isom was not an "employee" of the Insureds, but nonetheless suggested offering to defend as a "concession." The claims adjuster evaluating coverage under the *BLCF* initially believed that Isom was an employee of the Insureds and denied coverage on that basis. However, she quickly learned that Isom was not the Insureds' employee. Isom is correct that the Insurers sought a second opinion on coverage from counsel, but they only did so after initially deciding to disclaim coverage. Accordingly, the investigation uncovered no "true facts" that triggered coverage. To the contrary, the investigation only confirmed that Isom's claim was not covered under the EPL and thereby released the Insurers from any duty to defend. *Cf. Lipscomb*, 75 So. 3d at 560 (holding that insurer had no duty to defend where holder of homeowner's policy admitted during claim investigation that he rented out portion of property where fire started).

Accordingly, under the EPL, the Insurers had no duty to defend the Insureds against Isom's claim. Because there is no duty to defend here, there can be no duty to indemnify. *See* 14 Steven Plitt et al., *Couch on Insurance*

§ 200:3 (3d ed. 2007); *cf. U.S. Fid. & Guar. Co. v. Omnibank*, 812 So. 2d 196, 203 (Miss. 2002) ("[T]he duty to defend is broader than the insurer's duty to indemnify . . . ."). The Insurers were entitled to summary judgment on Isom's breach of contract claims.

## D.

Because the Insurers were under no duty to defend, they cannot be liable for breach of the duty of good faith and fair dealing for their refusal to do so. *See Daniels v. Parker & Assocs., Inc.*, 99 So. 3d 797, 801 (Miss. Ct. App. 2012) ("[T]o have a breach of the duty of implied good faith and fair dealing there must first be . . . a breach of [] contract.").

## IV.

Isom also appeals the district court's disqualification of his out-of-state counsel. The district courts "enjoy broad discretion to determine who may practice before them." *United States v. Nolen*, 472 F.3d 362, 371 (5th Cir. 2006). Under the circumstances, the district court did not abuse its broad discretion in concluding that counsel engaged in the unauthorized practice of law. *See In re Williamson*, 838 So. 2d 226, 235 (Miss. 2002) ("[A] foreign attorney will be deemed to have made an appearance in a Mississippi lawsuit if the foreign attorney signs the pleadings or allows his or her name to be listed on the pleadings."); *see also* S.D. Miss. L.U. Civ. R. 83.5 (adopting Mississippi Rules of Professional Conduct).

## V.

For the foregoing reasons, we AFFIRM.