# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 18, 2024

Lyle W. Cayce
Clerk

No. 23-60087

Gold Coast Commodities, Incorporated,

*Plaintiff—Appellant*,

*versus*

Travelers Casualty and Surety Company of America,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:22-CV-207

Before Smith, Elrod, and Graves, *Circuit Judges*.
James E. Graves, Jr., *Circuit Judges*:

In the world of business, corporations obtain commercial insurance to protect their assets, and commercial insurers customarily include exclusion provisions in their policies. Exclusion provisions dispel the notion that insurance coverage is without limits and place the insured on notice about actions or omissions that will trigger an insurer's denial of coverage. Insurance policies that include pollution exclusion provisions accomplish even more.

An insurance policy's pollution exclusion deters deliberate or negligent behavior that leads to environmental harm. When we hold that a

No. 23-60087

pollution exclusion excludes the insured from coverage, we protect the insurer's right to disincentivize corporations from engaging in bad faith actions with a known environmental impact. This case arises from claims asserted against an insured and, due to a pollution exclusion, those claims fall outside the insurance policy's reach. Accordingly, we AFFIRM.

## BACKGROUND

Gold Coast Commodities, Inc. ("Gold Coast") is a business corporation located in Rankin County, Mississippi. Gold Coast converts used cooking oil and vegetable by-products into animal feed ingredients. On June 25, 2016, Gold Coast became insured under Travelers Casualty and Surety Company of America ("Travelers"), Policy No. 087-LB-106545829. The Policy period was renewed through June 25, 2019. The co-owners and principals of Gold Coast, Thomas Douglas and Robert Douglas, were insured under the Policy.

In July 2018, the City of Brandon filed suit in the Circuit Court of Rankin County against Gold Coast and its principals alleging that Gold Coast dumped "significant amounts of high-temperature, corrosive, low-pH wastewater into the City's sewer system." These actions or omissions are alleged to have occurred during the Policy period. The City of Brandon seeks to recover for damages from negligence resulting from the "discharge" or "release" of "pollutants" as the term "pollutants" is defined in the Policy.

In June 2021, the City of Jackson filed suit in the Circuit Court of Hinds County against Gold Coast and its principals alleging that Gold Coast dumped "high temperature and corrosive" industrial waste into the City's sewer system. Likewise, these actions or omissions are alleged to have occurred during the policy period. The City of Jackson seeks to recover for damages from negligence resulting from the "discharge" or "release" . . . of "pollutants" as the term "pollutants" is defined in the Policy.

No. 23-60087

In letters dated July 19, 2018, and June 25, 2021, Travelers denied coverage against the City of Brandon and the City of Jackson, respectively. Travelers cited the Policy's pollution exclusion as the basis for its denial of coverage.

The Policy's pollution exclusion, Exclusion A.3, reads:

> "[Travelers] will not be liable for Loss for any Claim based upon or arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any Pollutant."

The Policy defines "Pollutant" as:

> "[A]ny solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

On April 20, 2022, Travelers removed the case. Travelers filed a Motion for Partial Summary Judgment arguing that it had no duty to defend Gold Coast and its principals in the respective lawsuits on September 30, 2022. On October 3, 2022, Gold Coast filed a Motion for Partial Judgment on the Pleadings arguing that: (1)Travelers has the duty to defend Gold Coast and its principals in the respective lawsuits; and (2) Travelers has a duty to reimburse Gold Coast and its principals for their defense costs.

The district court found that the claims asserted against Gold Coast were excluded from coverage under the pollution exclusion. Thus, Travelers had no duty to defend or indemnify Gold Coast and its principals in relation to the lawsuits brought against them by the City of Brandon and the City of Jackson. Therefore, the district court denied Gold Coast's Motions for Partial Judgment on the Pleadings and granted Travelers' Motion for Partial Summary. This appeal followed.

**STANDARD OF REVIEW**

No. 23-60087

The district court's grant of a motion for judgment on the pleadings and summary judgment is reviewed *de novo*. *Guerra v. Castillo*, 82 F.4th 278, 284 (5th Cir. 2023) (standard of review for Rule 12(c) motions); *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2023) (standard of review for summary judgment). Additionally, a district court's determination of state law and interpretation of an insurance policy are reviewed *de novo*. *Am. Intern. Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2023).

## DISCUSSION

"[T]he interpretation of insurance policies issued in [Mississippi]" is governed by Mississippi substantive law. *Id.* (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). "In order to determine state law, federal courts look to final decisions of the highest court of the state." *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992). To interpret an insurance policy, the Mississippi Supreme Court "look[s] at the policy as a whole, consider[s] all relevant portions together and, whenever possible, give[s] operative effect to every provision in order to reach a reasonable overall result." *Corban v. United Servs. Auto. Ass'n*, 20 So.3d 601, 610 (Miss. 2009) (citing *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So.2d 550, 552 (Miss. 1998)). "An insurance company's duty to defend its insured is triggered when it becomes aware that a complaint has been filed which contains reasonable, plausible allegations of conduct covered by the policy." *Baker Donelson Bearman & Caldwell, P.C. v. Muirhead*, 920 So.2d 440, 451 (Miss. 2006). "[N]o duty to defend arises when the claims fall outside the policy's coverage." *Id.* If a "policy can logically be interpreted in more than one way, the policy is ambiguous." *Crum v. Johnson*, 809 So.2d 663, 666 (Miss. 2002). "If a contract contains ambiguous or unclear language, then ambiguities must be resolved in favor of the non-drafting party." *United States Fidelity and Guar. Co. of Mississippi v. Martin*, 998 So.2d 956, 963

4

No. 23-60087

(Miss. 2008). Exclusionary clauses are strictly interpreted and the language within them must be "clear and unmistakable." *S. Healthcare Servs. v. Lloyd's of London*, 110 So.3d 735, 744 (Miss. 2013).

## DISCUSSION

The question before us is whether the allegations in the underlying complaints against Gold Coast stated claims that triggered Travelers' duty to defend. The district court concluded that all the claims in the complaints were clearly and unambiguously excluded from coverage based on the Policy's pollution exclusion. We agree.

The pollution exclusion of Traveler's policy, Exclusion A.3, reads:

> "The Company will not be liable for Loss for any Claim based upon or arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any Pollutant."

The Policy defines "Pollutant" as:

> "[A]ny solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

That language unambiguously excludes Gold Coast's actions. Indeed, despite the Mississippi Supreme Court ruling that a pollution exclusion with the same language was ambiguous in *Omega Protein*, here the distinct factual circumstances require a different outcome.

In *Omega Protein*, an explosion occurred at the Omega Protein plant while third-party contractors were working on a "large metal tank that was used for the temporary storage of stickwater." *Id.* at 130. Stickwater is composed of water, fish oil, and fish solids. *Id.* The explosion killed one of the contractors, Jerry Lee Taylor, II, who was welding on the metal tank.

5

No. 23-60087

Taylor's estate then sued Omega, who tendered defense of the lawsuit to Colony Insurance Company, its primary insurer, and Evanston Insurance Company, its excess insurer. *Id.* But Evanston Insurance Company did not contribute to the settlement and, instead, denied coverage based on its pollution exclusion. *Id.* A special master appointed to the case recommended that the trial court find that the pollution exclusion in Evanston's policy barred coverage. *Id.* The trial court adopted the special master's findings. *Id.*

On appeal, the Mississippi Supreme Court held that the trial court erred by finding that the pollution exclusion barred coverage. The Evanston pollution exclusion read:

> "This policy shall not apply to ultimate net loss arising out of or contributed to in any way by the actual, alleged or threatened discharge, dispersal, release, migration, escape or seepage of pollutants . . . As used in this exclusion, pollutants means any solid, liquid, gaseous, or thermal *irritant or contaminant* including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes material, to be recycled, recondition, reclaimed or disposed of." *Id.* at 131 (emphasis added).

The Mississippi Supreme Court did not find a definition of "irritant or contaminant" in the policy exclusion. *Id.* Omega argued that the gasses emitted from stickwater—methanethiol, hydrogen sulfide, and methane— were not irritants or contaminants because they: (a) are found in nature; and (b) were contained within the tank and "not contacting, contaminating, or irritating anything." *Id.* Evanston disagreed and argued that the gasses fit squarely within the pollution exclusion. *Id.*

"The words 'irritant' and 'contaminant'", wrote the Mississippi Supreme Court, "are subject to more than one meaning under the pollution exclusion." *Id.* at 132. The court reasoned that there were two ways a substance can be an irritant or contaminant: at its core or through contact.

No. 23-60087

First, a substance is an irritant or contaminant at its core when "no matter where it is, how it is contained, or whether it is in contact with something . . ." it is an irritant or contaminant. *Id.* Second, a substance can become an irritant or contaminant when it "comes into contact with something and is actively irritating or contaminating it." *Id.* The court reasoned that crude oil, for example, can be understood two-fold under this interpretive paradigm. On one hand, if contained, crude oil is not a contaminant. *Id.* Crude oil, thus, is not an irritant or contaminant at its core. On the other hand, if crude oil comes into contact with water, it becomes a contaminant. *Id.* Because Evanston did not clarify the meaning of *irritant or contaminant*, the pollution exclusion was "susceptible to more than one reasonable interpretation" and, therefore, ambiguous." *Id.* Because an ambiguous provision is construed in favor of coverage under Mississippi law, the Mississippi Supreme Court held that the trial judge erred. *Id.*

In the case at bar, Gold Coast argues that the district court failed to apply the ruling of *Omega Protein*. Gold Coast disagrees with the district court's analysis that *Omega Protein* had "unique facts" that made the definition of pollutant ambiguous. Gold Coast contends, instead, that the legal ambiguity in *Omega Protein* was based on "facts (i.e., crude oil) not in that case." We agree with the district court. The holding in *Omega Protein* turns on the facts, and the facts in *Omega Protein* are distinguishable from this case.

This Court has held that "[a] policy may be unambiguous, as applied to one set of facts, but may take on characteristics of ambiguity in connection with other facts." *Burton v. State Farm Fire & Cas. Co.*, 533 F.2d 177, 179 (5th Cir. 1976); s*ee also In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 210 (5th Cir. 2007)("When the words of a policy provision are clear and unambiguous *in the context of the facts . . .*"). In *Omega Protein*, the Mississippi Supreme Court determined that the *irritant or contaminant* language in the

7

pollution exclusion was ambiguous as applied to the facts in that case. As the district court aptly reasoned, "the underlying lawsuits against the insured [in *Omega Protein*] sought damages for injuries that were not caused by contact with methanethiol, hydrogen sulfide, or methane but rather by the explosion." There, the stickwater produced gases—methanethiol, hydrogen sulfide, and methane—which, while contained, were not irritant or contaminants. But once the gases were ignited, presumably by the welding and grinding of the contractors, they were irritants or contaminants. *Omega Protein*, 336 So. 3d at 132. Thus, whether the gases were irritants or contaminants could be logically interpreted in more than one way.

The allegations in both the City of Brandon's and the City of Jackson's complaints present facts that are paradigmatic for the application of the Policy pollution exclusion. Again, the Policy defines "Pollutant" as:

> "[A]ny solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

As the district court explained, the deliberate discharge of toxic industrial waste "is precisely the type of activity to which [Traveler's Policy pollution exclusion] was intended to apply." The pollution exclusion as applied here differs significantly from the pollution exclusion applied to the facts in *Omega Protein*. There is not a reasonable interpretation of the wastewater's form or qualities that would conclude that it was not an *irritant or contaminant*. Therefore, the Policy is not ambiguous. Because the Policy is not ambiguous, the claims are excluded from coverage. It, therefore, follows that Gold Coast did not sufficiently plead facts that trigger Traveler's duty to defend.

We AFFIRM.